## LAMPKIN ET AL. *v.* McCREIGHT.

### [78 South. 578, Division A.]

1. TRUST. *Constructions trust. Fraud.*

   Where one accepts employment to obtain title to lands for his principal, but secretly repudiates this agreement and takes titles in his own name, in such case he is nothing more than a trustee *ex maleficio* of the title to the land.

2. SAME.

   In such case the court will decree that the title be vested in the principal and that the agent be paid a reasonable compensation for his services and what he paid out to obtain title.

APPEAL from the chancery court of Oktibbeha county. HON. A. J. McINTYRE, Chancellor.

Suit by S. H. McCreight against Mrs. M. E. Lampkin, executrix, and others. From an adverse decree, defendants appeal.

The facts are fully stated in the opinion of the court.

*W. W. Magruder,* for appellant.

This case is controlled or should be controlled by the equitable proposition that an agent cannot, by a breach of duty to his principal, secure and retain the fruits of any transaction, involving such breach of good faith.

This doctrine is clearly defined in *Gillenwaters* v. *Miller,* 49 Miss. 150, in which the court announces that equity will strip from fiduciaries every advantage obtained by such methods.

The agent owes an absolute duty of loyalty and fidelity to his principal and cannot be permitted to retain the fruits of any fraudulent breach of trust perpetrated against his principal.

In *Winn* v. *Dillon,* 27 Miss. 494, our court declares that a person possessed of information as to the value

and location of certain government land who sells such information to another in order to enable him to enter such land, cannot thereafter, to the disadvantage of such other person, enter the land in his own name, but that such conduct is fraudulent and that he who seeks to secure such an advantage of his principal will be held as a trustee of the title to such land.

In *Fairly* v. *Fairly,* 38 Miss. 280, the purchase by an agent of personal property for the use and benefit of his principal was held to vest an equitable title thereto in his principal.

In *Murphy* v. *Sloan,* 24 Miss. 658, we have a case closely similar to the case at bar, in which our court held that an agent, for the purpose of collecting an execution, will not be allowed in equity to deal on his own account adversely to the interest of his principal but that he must act entirely for the benefit and advantage of his principal, his purchase of conflicting equities inuring to his principal.

Appellee, in the lower court, undertook to avoid the operation of this well-defined principle of law by his reiterated insistence that he had a right, in violation of his agreement with the Lampkin estate, to take title to this land in his own name in view of his claim that the Lampkin estate was to exchange this land with him for some uncertain twenty-acre tract of land, adjoining another place already owned by the estate. However, notwithstanding his exceedingly equivocal statements he was compelled to admit the material and controlling facts by which appellants are entitled to the relief sought by them on their cross-bill.

He also solemnly declares of record, "that cross-respondent (S. H. McCreight) accepted the proposal and exchange and agreed to render whatever service he could in securing the deeds from said Isaac Owen's heirs."

Now then, appellee, by his solemn admissions of record, admits that he made an agreement in this case

with appellants to secure for them title to the land in litigation. It is true that he also contends that they agreed to swap him these eighteen acres of land for some uncertain and undesignated twenty-acre tract of land, already owned by him. Even if appellants had made any such agreement which they most emphatically deny, that would have been a matter for specific performance or suit for breach of contract or some other action or remedy. When appellee admits, as he does admit, by these solemn admissions of his own answer to appellants' cross-bill that he made an agreement with appellants to secure for them title or rather to perfect their title to this tract of land, he admitted himself out of court in this case.

*G. Odie Daniel,* for appellee.

Appellants undertake by far fetched statements to show that appellee was employed by them to do this work. It is true that on some former date, appellee had rendered some slight service to appellants in the handling of their affairs in the immediate neighborhood. Appellee would have rendered them many other favors if they had asked him; and because they testify in this case that they were willing to pay him as they did other men who had been riding for them, about two dollars and fifty cents per day, certainly falls short of showing an employment. An actual employment is essential to agency. In this case, even if they had agreed to pay him for his services, the whole evidence would fail to show such an agency as would allow appellants to take advantage of their proclaimed duplicity in this case. Appellants are without any foundation of fact to support their statement that the court seems to have been largely actuated in its decision of this case by a purpose to protect the Owen negroes. It is difficult to understand how the decision of the chancellor, who tried this case, could have in any way affected the interest of

the Owen negroes. If appellants had been successful, the Owen negroes' interest would not have been affected a particle, nor did the fact that appellee was successful change that situation.

Since appellants have had so much to say about the sworn statements of appellee, etc., I should be glad if this court would read this answer to appellant's cross-bill and every word of appellee's testimony, both on direct and cross-examination. The chancellor in deciding this case was so emphatic. His oral opinion is so clear and pronounced that this court could not afford to consider this case without reading the same. Appellants are asking this court to reverse the case on facts decided against them by the lower court. This court cannot reverse the case on the facts unless there was a manifest disregard of same by the lower court. This court will not disturb the decision of the lower court on any question of fact, unless it is clearly shown that the lower court reached its decision manifestly against the evidence. Appellants cannot do this; cannot show such condition. The court decided the case on the facts after hearing every witness testify, seeing the witnesses on the stand, understanding their deportment, their relationship, their several interests and knowing personally a number of the witnesses. Appellants have lost nothing. The evidence shows they have been in possession of this land sufficiently long for the rents and profits to have consumed their entire interest. Not satisfied with that, nor satisfied with getting a six-sevenths interest, which they value in the argument at about two hundred forty dollars, for twenty dollars, they still want this court to uphold their hands in securing the services of appellee by misleading statements and inducing him to go out and securing this deed for them when, in point of fact, he thought he was securing it for himself. If this court should reverse this case on the facts as delineated in this trial and hold that appellee without employment or remuneration

was the agent of appellants and that the title which was vested in himself should be held for the use and benefit of appellants, it seems to me would be to justify appellants in a wilful fraud upon appellee, because their testimony throughout shows clearly and beyond dispute that appellee believed when he sought the Owen negroes and secured their deed that the same would inure to his own benefit.

We very respectfully ask the court to affirm this case, because the learned chancellor who tried the case in the lower court would never have been so emphatic had not the facts warranted.

SYKES, J., delivered the opinion of the court.

S. H. McCreight, appellee, filed a petition in the chancery court of Oktibbeha county for a partition of eighteen acres of land. In his petition he alleged that he was the owner by purchase from certain negroes of an undivided six-sevenths interest in the land in controversy, and that the heirs or devisees of R. A. Lampkin, deceased, were the owners of the other undivided one-seventh interest in said land; that R. A. Lampkin, his heirs and devisees, had been in possession of these lands for ten or fifteen years, and had, appropriated to their use the rents, profits, etc. Petitioner asked for an accounting of these rents and profits. The petition alleges that the land cannot be divided in kind, and that it be sold for a division of the proceeds. Answer was filed by the defendants denying the material allegations of the bill.

The answer was then made a cross-bill, and the cross-bill alleged, in substance, that S. H. McCreight, appellee, represented to E. W. Lampkin and H. H. Bonner, son and son-in-law, respectively, of R. A. Lampkin, deceased, and agents of the executrix of the estate of R. A. Lampkin, that there was a defect in the title to the land in controversy; that certain negroes owned

or claimed to own a six-sevenths interest in this land; that, previous to the death of R. A. Lampkin, appellee and Lampkin had practically agreed upon a trade of these eighteen acres of deceased for twenty acres of land belonging to appellee, but that the trade had not been consummated because of the alleged defect in the title; that he, (McCreight) believed he could get a quitclaim deed from these negroes; that McCreight was employed by Bonner and Lampkin to procure this quitclaim deed at a price not to exceed thirty dollars; that they would reimburse McCreight for the amount expended by him in procuring the quitclaim deed and pay him a reasonable compensation for his services; that McCreight accepted this employment and got a quitclaim deed from the negroes for the sum of twenty dollars, but that, instead of naming as grantees in the deed the appellants, he wrongfully and fraudulently inserted as grantee himself in his deed. Cross-complainants ask that the court hold McCreight as a trustee *ex maleficio* of this undivided six-sevenths interest in the land, and offered to reimburse appellee for the twenty dollars expended by him in procuring the quitclaim deed and pay him the value of his services for doing so.

The answer of appellee to the cross-bill, after denying the allegation therein, alleges the facts of the transaction about procuring the quitclaim deed to be as follows: Appellee alleged that he advised Bonner and Lampkin of the alleged defect in the title to this land; that during the lifetime of R. A. Lampkin he and deceased, Lampkin, had practically agreed upon a trade of the lands as above stated, but that said trade had not been consummated, because the deceased, Lampkin, had not gotten a quitclaim deed from the negroes claiming to own an interest therein; that, after discussing the matter with Bonner and Lampkin, these appellants advised him that, if he would assist them in securing the outstanding interests of these negroes, they would give

him the eighteen acres for his twenty acres; "that cross-respondent accepted the proposal for exchange and agreed to render whatever services he could in securing the deeds from the said Isaac Owen heirs."

Testimony was introduced by both sides, and the learned chancellor rendered a decree in favor of the petitioner, and ordered a sale of the lands for a division of the proceeds in accordance with the prayer of the petition. He denied that the petitioner had any right to an accounting for rents and profits. From this decree, appellants prosecute an appeal to this court.

The testimony of the appellee, McCreight, himself is to the effect that he called to see Messrs. Lampkin and Bonner, who were representing the executrix in winding up the affairs of this estate, and told them that he and the deceased, R. A. Lampkin, had frequently discussed trading these two tracts of land, but did not do so because of the outstanding claim of these negroes; that he discussed with them the trade, and that they agreed to make the same; that he told them of this claim of the negroes to the land. He was then asked what agreement he made about getting the defect cleared up. To that question he replied that he was asked by Mr. Bonner if he could get a deed from the heirs to the land, and that Mr. Bonner asked him how much he could get it for, and wanted to know if he could not get it for ten or fifteen dollars; that he told Mr. Bonner he would not offer the heirs that little amount, and that Mr. Bonner then told him to try to get the deed, but not to go over thirty dollars, and that he (Bonner) "would give me the eighteen acres and pay my money back." Mr. Bonner then wrote a quitclaim deed for the negroes to sign, naming the deceased, Lampkin, as the grantee. This deed was written by Bonner at the request of McCreight. McCreight then went to see the negroes that night, and the next day had them meet him at the court house in Starkville for the purpose of signing the deed. In the meantime, McCreight had read the deed

and saw that the deceased, Lampkin, was the grantee therein. Before the negroes signed the deed, McCreight was informed by the chancery clerk that the deed was void, because the grantee was dead. Thereupon he tore up this deed and took a quitclaim deed to himself as grantee. The appellee explicitly states, on further examination, that he accepted this deed from Bonner, and put it in his pocket, and left their place of business in order to secure its execution from the Owen heirs. He states that the reason he took the deed in his own name, after tearing up the void deed, was because they had already traded the land, and he was going to be the owner of the eighteen acres of land anyway, and he thought he had better take this deed in his own name, to protect himself and force the appellants to stand up to the trade. This is the legal effect of his testimony about this matter.

From the sworn answer of appellee to the cross-petition, and from his own testimony, the substance of which is above given, we unhesitatingly say that he accepted the employment from appellants to get the deed from the negroes, just as the appellants wanted the deed taken; that he was acting as the agent of the appellants in the procuring of this deed; that under the law he had no right secretly to repudiate this agreement and take this deed to himself; that his act was wrongful, and a legal fraud upon the rights of his principals; and that he is nothing more than a trustee *ex maleficio* of the title to this land. *Murphey* v. *Sloan,* 24 Miss. 658; *Fairly* v. *Fairly,* 38 Miss. 280; *Winn* v. *Dillon,* 27 Miss. 494.

The decree of the lower court will be reversed, and a decree entered here, divesting the appellee, McCreight, out of all interest and title to the land in controversy, and vesting the same in appellants; that appellants will reimburse appellee for the twenty dollars paid out in procuring the title from these negroes, together with legal interest from the date of payment;

that appellants will further pay the appellee, as reasonable compensation for his services in procuring the deed, the sum of five dollars. Reversed, and decree here for appellants in accordance with this opinion.

*Reversed, and decree here.*